| | | |
|---|---|---|
| **UNITED STATES BANKRUPTCY COURT** | | FOR PUBLICATION |
| **SOUTHERN DISTRICT OF NEW YORK** | | |

-------------------------------------------------------x
:
In re                                           :        Chapter 11
:
THE ADONI GROUP, INC.            :        Case No. 14-11841 (REG)
:
:
         **Debtors.**                          :
:
-------------------------------------------------------x
:
**OFFICIAL COMMITTEE OF**        :
**UNSECURED CREDITORS OF THE** :
**ADONI GROUP, INC.,**                :
:
         **Plaintiff,**                        :
:
v.                                              :        Adv. Proc. No. 14-02382 (REG)
:
**CAPITAL BUSINESS CREDIT, LLC,** :
:
:
         **Defendant.**                     :
-------------------------------------------------------x

**MEMORANDUM DECISION GRANTING MOTION TO DISMISS PLAINTIFF'S
FIRST AND SECOND CLAIMS FOR RELIEF**

APPEARANCES:

HAHN & HESSEN LLP
*Counsel for Defendant*
488 Madison Avenue
New York, NY 10022

    By: Joshua Ian Divack

McGRAIL & BENSINGER LLP
*Counsel for Plaintiff*
888-C 8th Ave., #107
New York, NY 10019

    By: David C. McGrail

**MICHAEL E. WILES**
**UNITED STATES BANKRUTPCY JUDGE**

Before the Court is the motion (the "Motion") by defendant Capital Business Credit, LLC ("Capital") to dismiss two of the three claims alleged by the Official Committee of Unsecured Creditors (the "Committee") in its Complaint. The Committee alleges that a UCC-1 initial financing statement was filed by Capital one day before Capital signed a security agreement with The Adoni Group, Inc. (the "Debtor"). The Committee further contends that the filing of the financing statement was "unauthorized" when it occurred, and that the financing statement therefore is of no effect. Capital contends in its Motion that the execution of the security agreement authorized and ratified the financing statement as a matter of law, even if the financing statement was filed one day earlier than the date of the security agreement. For the reasons stated below, the Court grants Capital's Motion.

## BACKGROUND

The facts stated herein are taken from the Complaint, the allegations in which are presumed to be true for purposes of the Motion.

On May 15, 2013, Capital filed an initial UCC-1 Financing Statement with the New York State Department of State (the "Financing Statement"), claiming that Capital held a security interest in the following collateral:

> All assets of the Debtor, of every kind and nature, now existing and hereafter acquired and arising and wherever located, including, without limitation, accounts, deposit accounts, commercial tort claims, letter of credit rights, chattel paper (including electronic chattel paper), documents, instruments, investment property, general intangibles (including payment intangibles), software, goods, inventory, equipment, furniture and fixtures, all supporting obligations of the foregoing, and all cash and noncash proceeds and products (including, without limitation, insurance proceeds) of the foregoing, and all additions and accessions thereto, substitutions therefor and replacements thereof.

The parties had not yet signed a security agreement and the Debtor had not otherwise authorized Capital to file a financing statement as of May 15, 2013.  *See* Complaint ¶¶ 12, 28, 29.[1]

On May 16, 2013, Capital and the Debtor entered into a Factoring Agreement pursuant to which Capital purchased accounts from the Debtor and made formula-based loans and advances to the Debtor against the purchase price of the Debtor's accounts and against the value of the Debtor's finished goods inventory.  The Debtor granted Capital a security interest in the following assets:

> [A]ll of our accounts, contract rights, computer software, programs, stored data, aging schedules, customer lists, and general intangibles (including all patents, trademarks, and copyrights registered in the United States Copyright or Patent offices, together with the goodwill of the business in connection with which such trademark may be used and the royalties and other fees which become due for the use of such patents, trademarks, or copyrights), whether or not otherwise specifically assigned to you in this Agreement, now existing or hereafter acquired, and in the proceeds and products thereof, any security and guarantees therefor, in the goods and property represented thereby, and in all of our books and records relating to the foregoing, and in all reserves, credit balances, sums of money at any time to our credit with you, and any of our property at any time in your possession. In addition to Receivables and all proceeds thereof, we also assign to you all right, title and interest, and grant to you a security interest in, the following collateral to secure all of our present and future obligations and indebtedness to you: (1) all deposit, savings, passbook or like accounts maintained at any bank, savings and loan or similar institution; and (2) the proceeds of any tax refund due to us by the state or federal government.

The Factoring Agreement included the following language regarding the filing of a financing statement:

> We hereby appoint you as our attorney-in-fact and authorize you to sign such financing statements on our behalf as debtor or to file

---

[1] Capital contends that security agreements actually were executed on May 14, 2013 and that the dates that appear on the agreements (May 16, 2013) are incorrect.  The Committee disagrees.  For purposes of the Motion, the Committee's allegations are treated as correct.

>such financing statements without our signature, signed only by you as secured party.

Also on May 16, 2013, Capital and the Debtor entered into an Inventory Security Agreement (together with the Factoring Agreement, the "Security Agreements") which granted Capital a security interest in, among other things, the Debtor's current and future inventory. The Inventory Security Agreement stated that it was to be considered to be "supplementary to" and "part of" the Factoring Agreement. The parties agreed that the Security Agreements would be governed by New York law.

On June 19, 2014, an involuntary bankruptcy petition was filed against the Debtor (Case No. 14-11841 (REG)). On September 4, 2014, the Court entered the *Final Order Authorizing the Purchase and Sale of Accounts and the Incurrence of Secured Indebtedness* ("DIP Financing Order"), which granted the Committee standing to challenge the validity of Capital's security interests. On October 15, 2014, the Committee filed this Adversary Proceeding.

In its Complaint, the Committee asserts three claims against Capital. First, the Committee seeks to avoid Capital's pre-petition security interests pursuant to 11 U.S.C. §§ 544 and 551 because they were not perfected on the Petition Date. The Committee alleges that the Debtor had not signed the Security Agreements or otherwise authorized the filing of the Financing Statement as of May 15, 2013, and that the Financing Statement therefore was void and of no effect. Second, because the security interests were purportedly not perfected, the Committee contends that the security interests are subject to avoidance and that this Court should disallow and expunge any secured claims made by Capital pursuant to 11 U.S.C. § 502(d). Third, the Committee objects to the fixing of Capital's claim in the approximate amount of $5.8 million, alleging that the amount is not supported by sufficient evidence and is inconsistent with the amount set forth in other records.

In its Motion, Capital argues that the first and second claims in the Complaint must be dismissed as a matter of law because Capital's security interests were perfected and valid on the Petition Date. Capital asserts that Sections 9-502 and 9-509(b) of the Uniform Commercial Code, when read together, provide that an initial financing statement that is filed without authorization becomes effective when the debtor subsequently executes a security agreement. Capital notes that the execution of a security agreement automatically "authorizes" a financing statement under Section 9-509(b) of the Uniform Commercial Code, and it contends that this automatic "authorization" includes not only an automatic permission to make a future filing, but also an automatic ratification of a previously filed financing statement. Capital acknowledges that there are no reported cases that have explicitly addressed this issue, but it relies heavily on the Official Comments and on secondary sources in support of its position.

The Committee agreed, during oral argument of the Motion, that "ratification" may be sufficient to validate a financing statement that was filed without prior authorization. However, the Committee argues that the execution of a security agreement does not automatically provide such ratification, and that ratification (if it exists) can only be found pursuant to common law principles. The Committee also contends that there are factual issues relating to common law ratification that would require a trial.

## DISCUSSION

A.    Legal Standard

Rule 12(b)(6) allows a party to move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the nonmoving party and must limit their review to facts and allegations contained in the complaint, documents either incorporated into the complaint by reference or attached as exhibits, and matters of which the court may take judicial notice. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). Following the Supreme Court's decision in *Ashcroft v. Iqbal*, courts use a two-prong approach when considering a motion to dismiss. *See Weston v. Optima Commc'ns Sys., Inc.*, No. 09 Civ. 3732(DC), 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions that are clothed in factual garb. *Iqbal*, 129 S.Ct. at 1949–50; *Boykin v. Keycorp*, 521 F.3d 202, 204 (2d Cir. 2008). Second, the court must determine whether these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1951.

  B.  Article 9

Three Article 9 sections are primarily at issue in this case. First, Section 9-502(d) provides that "a financing statement may be filed before a security agreement is made or a security agreement otherwise attaches." NY UCC § 9-502(d). The Committee concedes that the early filing of a financing statement may be permissible. However, the Committee contends that such an early filing can only be made if it is "authorized" under other UCC provisions – or, as noted above, if it is later "ratified" in accordance with common law standards.

Second, Section 9-509 provides as follows:

> (a) Person entitled to file record. A person ***may file*** an initial financing statement, amendment that adds collateral covered by a financing statement, or amendment that adds a debtor to a financing statement ***only if***: (1) the debtor ***authorizes*** the filing ***in an authenticated record or pursuant to subsection (b) or (c)***; or (2) the person holds an agricultural lien that has become effective

> at the time of filing and the financing statement covers only collateral in which the person holds an agricultural lien.
>
> (b) Security agreement as authorization. ***By authenticating or becoming bound as debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial financing statement***, and an amendment, covering: (1) the collateral described in the security agreement; and (2) property that becomes collateral under Section 9-315(a)(2), whether or not the security agreement expressly covers proceeds.

NY UCC § 9-509(a)-(b) (emphasis added). The Committee argues that Section 9-509(a) determines whether a person "may file" a statement and therefore that the authority to make the filing has to be determined as of the time of the filing itself. The Committee further argues that the wording of the statute (stating that a person may file "only if" a Debtor "authorizes" the filing) contemplates an authorization given in advance of the filing. Capital argues in response that Section 9-509(a) does not say that the Debtor must provide authorization "in advance" and that the requirement of an "advance" authorization would be inconsistent with the "automatic" authorization that is provided in Section 509(b) through the execution of a security agreement.

If Section 9-509(a) stood by itself, the Committee's reading of the statute might have greater strength. However, the Committee's reading of Section 9-509(a) is undermined by the Committee's own admission that "common law ratification" may give effect to a previously "unauthorized" financing statement. If (as the Committee argues) Section 9-509(a) "only" permits a filing that is authorized in advance, there would be no room in the statute for the application of "ratification" principles, whether under the common law or otherwise.

In addition, Section 9-509(b) states generally that a "debtor or new debtor" "authorizes" the filing of a financing statement by authenticating or "becoming bound" by a security agreement. The word "authorizes" is not defined in the UCC, but in ordinary usage the word has multiple meanings that could support either party's view. One definition of "authorize" is to

"empower" a person to take action or to give "permission" for an act to occur; this is a forward-looking definition that would be consistent with the Committee's contentions. *See* Webster's Ninth New Collegiate Dictionary (1988). However, the word "authorize" is also commonly used as a word meaning to "sanction" or "approve," and with that meaning the word "authorize" would encompass the validation of a prior act. *See* Black's Law Dictionary (9th ed. 2009). In fact, some sources list the words "authorize" and "ratify" as synonyms for each other. *See* Collins English Thesaurus, *available at* http://www.collinsdictionary.com/dictionary/english-thesauraus/authorize. Capital argues essentially that the word "authorize" in Section 9-509(b) is not solely forward-looking and that it embraces the concept of "ratification" of prior filings as well as the permission to make future filings.

The third provision that is relevant to the Motion is Section 9-510(a), which provides as follows:

> (a) Filed record effective if authorized. A filed record is effective *only* to the extent that it *was filed* by *a person that may file it* under Section 9-509.

NY UCC § 9-510(a) (emphasis added). This oddly-worded provision is of little use in answering the question raised by the Motion. The same sentence speaks in two different tenses (referring to a record that "was" filed by a person "that may file it"), without any explanation or context. The Committee argues that the provision means that a record is only effective if it "was filed" by a person who "was" entitled to file it at the time it was filed. However, if that is what the drafters of Section 9-510(a) intended, it would have been easy to say so. Moreover, the Committee's reading of Section 9-510(a) once again cannot be squared with the Committee's concession that an unauthorized filing may be ratified under the common law. If Section 9-510(a) means that a filing may "only" be effective if there was a prior authorization, then there would be no room for ratification at all.

Capital argues, by contrast, that Capital became a "person that may file" a financing statement when the security agreement was executed on May 16, 2013, and that the filed record is therefore effective because it "was filed" by Capital. However, if that is what the drafters intended, then certainly it would have been easier to say that a filed record is effective if it was filed by a person "who had or who later obtained" authority for the filing.

We have been unable to find any court decision that addresses the issue raised by the Motion.[2] Nor were we able to find any explanation for the odd language that appears in Section 9-510(a). The broad scope of Section 9-509(b) suggests that Capital's interpretation of the statute is the better one. In addition, the Committee's concession that "ratification" may authorize a prior filing necessarily means that the word "authorize" in Sections 9-510 and 9-509(b) cannot purely be forward-looking, as explained above. To the extent the statute is unclear, however, it is appropriate to consider other sources as an aid to its interpretation. In this regard, the Official Comments to the UCC strongly support the position taken by Capital, as do the treatises cited by the parties.

"Official Uniform Comments do not have the force of law, but are nonetheless the most useful of several aids to interpretation and construction of the Uniform Commercial Code." *LTV Energy Prods. Co. v. Northern States Contracting Co. (In re Chateaugay Corp.)*, 162 B.R. 949, 955 n.5 (Bankr. S.D.N.Y. 1994) (citing J. White & R. Summers, Uniform Commercial Code § 4, at 12 (3d ed. 1988)). Official Comment 4 to UCC § 9-322, which governs the priority of secured interests, specifically states that "the unauthorized filing of an otherwise sufficient initial financing statement becomes authorized, and the financing statement becomes effective, upon the debtor's ***post-filing authorization or ratification*** of the filing." (Emphasis added.) In this

---

[2] The decisions cited by the Committee are not on point, as discussed below.

regard, the Official Comments make clear that the word "authorizes" is not solely forward-looking. Official Comment 4 to Section 9-509 further provides that "[u]nder subsection (b), the authentication of a security agreement *ipso facto* constitutes the debtor's authorization of the filing of a financing statement covering the collateral described in the security agreement. The secured party need not obtain a separate authorization." There is no suggestion in the Official Comments that this *ipso facto* authorization is only forward-looking.

In addition, the Official Comments expressly endorse the concept of "ratification" of prior filings. Official Comment 3 to § 9-502 states the following:

> Section 9-509(a) entitles a person to file an initial financing statement . . . only if the debtor authorizes the filing . . . Of course, a filing has legal effect only to the extent it is authorized. See Section 9-510. Law other than this Article, including the law with respect to ratification of past acts, generally determines whether a person has the requisite authority to file a record under this Article. See Section 1-103. However, under Section 9-509(b), the debtor's authentication of (or becoming bound by) a security agreement *ipso facto* constitutes the debtor's authorization of the filing of a financing statement covering the collateral described in the security agreement. The secured party need not obtain a separate authorization.

These Official Comments indicate a clear intent on the part of UCC commentators to give effect to a financing statement that is authenticated by a security agreement after the statement is filed. The treatises cited by the parties also support the position that Capital has taken. One treatise explained:

> [I]f a prefiler fails to get up-front authority from the debtor, the filing is ineffective. If the loan negotiations reach a successful conclusion and the debtor finally signs a security agreement, that agreement constitutes authority to file a financing statement. UCC 9-509(b). Under the principle of ratification, the signing of the security agreement authorizes the prefiling. See UCC 9-509, Comment 3.

1 Barkley Clark and Barbara Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* § 2.18[2] at 2-279 (3d ed. 2013).

Holding that a security agreement automatically ratifies and thereby "authorizes" a pre-existing financing statement is also consistent with Section 1-102 of the Uniform Commercial Code, which states that the statute should be "liberally construed and applied to promote its underlying purposes and policies." NY UCC § 1-102(1). One of the main purposes of the revisions to Article 9 was to put in place a system of "notice filing" to alert third parties to the potential existence of a security interest. As noted above, Section 9-502 explicitly allows the filing of a financing statement *before* the execution of a security agreement, and Official Comment 2 explains the purpose of this provision as follows:

> This section adopts the system of "notice filing." What is required to be filed is not, as under pre-UCC chattel mortgage and conditional sales acts, the security agreement itself, but only a simple record providing a limited amount of information (financing statement). The financing statement may be filed before the security interest attaches or thereafter. . . . The notice itself indicates merely that a person may have a security interest in the collateral indicated. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. . . . Notice filing . . . obviates the necessity of refiling on each of a series of transactions in a continuing arrangement under which the collateral changes from day to day. However, even in the case of filings that do not necessarily involve a series of transactions (e.g., a loan secured by a single item of equipment), a financing statement is effective to encompass transactions under a security agreement not in existence and not contemplated at the time the notice was filed, if the indication of collateral in the financing statement is sufficient to cover the collateral concerned.

The underlying policy behind filing an initial financing statement—to put potential creditors on notice that there may be a lien on the debtor's property—and the fact that financing statements may be filed without much information and before security agreements are reached show that the legislature wants to encourage parties to provide basic notice to others as soon as

possible. This goal was met here, as Capital put others on notice of Capital's claimed security interests on May 15. The fact that the Financing Statement was filed one day before the Security Agreements were signed does not violate the "notice" purposes of such a filing, and is a sequence of events that the statute permits.

The requirement that a filing be "authorized" also serves purposes, including protection of the debtor against interference with its financings, fraud or other mischief. However, there is no allegation that the early filing in this case produced any prejudice or damage to the debtor or to any other person of a kind that the "authorization" requirement might reasonably be intended to prevent. Nor has the Committee identified any other "purpose" of the UCC that would require the word "authorizes" in Section 9-509(b) to be interpreted only as forward-looking, and as not embracing the concept of automatic ratification. The Committee acknowledges that the Financing Statement would have been valid and *ipso facto* authorized by the Security Agreements if the Financing Statement had been filed on May 17, but it contends that the same Security Agreements were not sufficient to authorize that same Financing Statement when it was filed on May 15. It is hard to identify any purposes of the Uniform Commercial Code that would be served by interpreting the statute in this way.

The Committee cited several cases in support of its argument that security agreements do not ratify previously-filed financing statements, but the facts of these cases are all distinguishable from this case. First, in *Scotto Rest. Grp., LLC v. Mission Valley Bank (In re Scotto Rest. Grp. LLC),* 2012 Bankr. LEXIS 3485 (Bankr. W.D.N.C. 2012), the plaintiff debtor filed a motion for partial summary judgment asserting that the defendant lenders lacked a valid security interest in the debtor's collateral. The lenders filed an initial financing statement against the debtor for an unsecured guaranty of the loan obligations of its corporate parent. The debtor later merged with

its parent, with the debtor as the surviving entity, and the debtor then obtained loans from the lenders pursuant to a security agreement. The lenders filed an amendment to the initial financing statement. The debtor argued that the initial financing statement was unauthorized under N.C. Gen. Stat. § 25-509(a) and the amendment did not rehabilitate the unauthorized initial financing statement. The court agreed and found that both the initial financing statement and the amendment were ineffective, but it declined to find that the claim was entirely unsecured because there were outstanding issues of material fact.

In *Scotto*, the court noted that "Subsection (b) states that a security agreement is implicit authorization to file a financing statement, but the Plaintiff did not sign a security agreement at this time." *Scotto*, 2012 Bankr. LEXIS 3485 at *4. However, the question of *ipso facto* authorization and ratification of a pre-existing financing statement was never considered or discussed by the court. Nor does the *Scotto* decision contain any discussion of the relevant statutory provisions. *Scotto* also has been criticized by commentators:

> In a 2010 clarifying change to the Official Comments, the reference to non-Article 9 law was expanded to explicitly include "law other than this Article, *including the law with respect to ratification of past acts*". See Official Comment 3 to [Rev] § 9-509. See also Official Comment 3 to [Rev] § 9-502 (same); U.C.C. § 1-103(b) (UCC is supplemented by the principles of law and equity). In light of this clarification the court in *In re Scotto Restaurant Group, LLC*, 2012 WL 3070351 (Bankr. W.D.N.C.) should not have found an initial financing statement and amendment thereto to be ineffective. In that case the financing statement had not been authorized at the time of filing and there was no separate authorization, but the debtor had later authenticated a security agreement, and the court took no note of that fact.

9B Hawkland, Miller & Cohen, *Uniform Commercial Code Series* § 9-509:3 at n.5 (Rev. Art. 9) (2013-2014 Cumulative Supp.).

Second, the Committee cites the decision in *McDaniel v. 162 Columbia Hgts. Hous. Corp.*, 21 Misc. 3d 244 (N.Y. Sup. Ct. 2008). In *McDaniel*, the plaintiff advanced funds to the defendants to settle an action and allegedly made these payments with the understanding that she would acquire a proprietary lease on an apartment unit owned by the defendants. She filed an initial financing statement to perfect a "common-law" purchase-money lien on the proceeds of the sale of the property. The defendants then moved for an order requiring the plaintiff to terminate this filing. The court found that the plaintiff was not a secured party under New York law and that she did not have a lien on the property. The court noted that under UCC Section 9-509, "[t]here must be some written evidence of the debtor's intent to grant the security interest," and that "under subdivision (b), a valid enforceable security agreement is required as a predicate to the filing of a financing statement." 21 Misc. 3d at 248. The Committee argues that the use of the word "predicate" in the *McDaniel* decision should be construed as a holding that a security agreement must be executed *before* a financing statement is filed. However, that puts too much emphasis on a single word in the court's opinion and ignores the context in which the decision was made. The decision in *McDaniel* did not consider whether a subsequent security agreement could provide authorization for a prior filing, and it never addressed the issue that is decided here. Instead, it appears that no security agreement was ever signed in *McDaniel*.

Third, the Committee cites the decision in *U.S. v. Orrego,* 2004 U.S. Dist. LEXIS 12252 (E.D.N.Y. 2004). In *Orrego*, a federal inmate filed false initial financing statements against the judge and prosecutor involved in his case and the warden of the prison. The United States brought suit against the inmate for violations of civil and criminal statutes. In granting the government's motion for summary judgment, the court stated that "[a]lthough Defendant purported to file a security agreement, [the judge, prosecutor and warden] could not have

authenticated it before Defendant filed the initial financing statements against them, since Defendant did not send any copies of the lien-related documents [to the judge or prosecutor] until March 12, 2003, see Ex. ID (Certificate of Service), and has not yet sent anything to [the warden]." *Id.* at 10-11. The Committee cites to the statement that the financing statements could not have been authorized "before" they were filed as though the court in *Orrego* had rejected the notion that a subsequent security agreement could authorize a prior financing statement. In fact, however, there never was any security agreement in *Orrego*, and the effect of a subsequent security agreement was not at issue in that case.

Last, in *Richards Group., Inc. v. Brock*, 2008 U.S. Dist. LEXIS 55139 (N.D. Tex. July 18, 2008), the plaintiff creditors' committee brought suit to pierce the corporate veil of two corporations. An individual defendant filed an initial financing statement purporting to cover all of the corporate defendant's assets, but the court found that he did not have an actual security interest in the property. The court noted that the individual defendant "acknowledged that, before he filed the UCC-1, he did not have a security interest in any of [the corporate defendant's] assets," but it also found that the corporate defendant subsequently fraudulently granted to the individual defendant a security interest in the property to put him in a better position than other creditors. *Id.* at *40. The court considered this fraudulent transfer in piercing the corporate veil. Again, the Committee interprets the decision as holding that a security agreement must predate the filing of a financing statement, but the court in the *Richards Group* decision never considered *ipso facto* authorization pursuant to a later-executed security agreement.

## CONCLUSION

For the reasons stated above, Capital's Motion is granted and the first two claims in the Committee's Complaint are dismissed.

Dated: New York, New York
       May 4, 2015

                                              **/s/ Michael E. Wiles**
                                              MICHAEL E. WILES
                                              United States Bankruptcy Judge